## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JAMES JASON DOLLAR,

      Plaintiff,

v.

ANNE ARUNDEL COUNTY ET AL.,

      Defendants.

Civil No. 24-1642-BAH

  \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff James Jason Dollar brought suit against Anne Arundel County ("the County"), Michael Shier, Kelvin Rivers, Amber King, and Caprice Herrera (collectively, "Defendants") alleging violations of federal and state civil rights law. ECF 37 (amended complaint). Pending before the Court is a motion to dismiss, or, in the alternative, for summary judgment, filed by Defendants Rivers, Shier, and the County. ECF 38. Plaintiff filed an opposition, ECF 45, and Defendants filed a reply, ECF 51. Defendant King has also filed a partial motion to dismiss, ECF 41, which is ripe and pending before the Court. Plaintiff also filed an opposition to King's motion, ECF 46, and King joined in the other Defendants' reply, ECF 51. All filings include memoranda of law, while ECFs 38, 45, 46, and 53 include exhibits.[1] Further, Plaintiff has filed several other motions now pending before the Court, including two motions to seal, ECFs 47 and 54, as well as a motion for leave to file a surreply, ECF 52, and a motion to amend his response in opposition, ECF 53. The Court has reviewed all relevant filings and finds that no hearing is necessary. *See*

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, the motion to dismiss, or, in the alternative, for summary judgment, filed by Defendants Rivers, Shier, and the County, ECF 38, is GRANTED; Defendant King's motion to dismiss is also GRANTED. Plaintiff's motions to seal, ECFs 47 and 54, are GRANTED, as is Plaintiff's motion to amend, ECF 53, while Plaintiff's motion for leave to file a surreply, ECF 52, is DENIED.

## I. **BACKGROUND**

This action arises out of events that occurred in June of 2021. On June 7, 2021, Plaintiff visited the LabCorp draw station located in the Walgreens pharmacy at 3106 Solomon's Island Road, Edgewater, MD 21037. ECF 37, at 4 ¶ 14. Plaintiff reports that he went to LabCorp for "multiple reasons," including to check certain indicators "required by Plaintiff's psychiatrist Dr. Debra Petrover . . . , who had told Plaintiff to stop tak[ing] certain medication that caused a rash, because that could be a life-threatening condition." *Id.* ¶ 15. Defendant Herrera was the phlebotomist administering Plaintiff's draw; Plaintiff alleges that during the procedure, Defendant Herrera "fail[ed] to follow protocol, including using sanitary measures to avoid contamination of the blood sample, proper labeling of the vials [ ], and proper application of identifying stickers with bar code numbers and Plaintiff's name." *Id.* ¶ 16. Plaintiff says that he "immediately informed Defendant Herrera that she was not following procedure" and "expressed his concern that his samples would not be accurate[.]" *Id.* ¶ 17. He further reports that he "pleaded with Defendant Herrera not to believe the rumors that [Plaintiff] is a threat to the community" and stated, "I am a good person." *Id.* (internal quotation marks omitted).

After he left the LabCorp draw station, Plaintiff says that he "remained concerned about Defendant Herrera's failure to follow procedures." ECF 37, at 5 ¶ 19. Plaintiff then "called LabCorp to caution [Defendant Herrera] that failing properly to submit Plaintiff's blood sample would result in legal consequences." *Id.* Plaintiff reports that "Defendant Herrera hung up on

Plaintiff and refused to discuss the matter." *Id.* In addition, Plaintiff says that "[a]t no time did [he] separately call LabCorp and identify himself as a 'registered sex offender' which is a lie." *Id.* ¶ 20.

The next day, on June 8, 2021, Plaintiff alleges that he continued to be concerned about his blood draw and "called LabCorp [ ] several times to warn Defendant Herrera that she would be committing a crime if she 'lied,'" but each time he called, a LabCorp employee "hung up" the phone. ECF 37, at 5 ¶ 21. During these calls, Plaintiff says he "asserted his legal rights to receive proper medical care, informing who he believed was Defendant Herrera that her failure to follow proper procedures could amount to a crime and hence result in jail." *Id.* ¶ 22. Plaintiff avers that such a statement is "factual" and "not a threat."[2] *Id.*

Later in the afternoon of June 8, 2021, Plaintiff received a call from Defendant Rivers, who, Plaintiff reports, "demand[ed] that Plaintiff tell him where [Plaintiff] was" and informed Plaintiff that officers had visited Plaintiff's mother's home looking for Plaintiff. ECF 37, at 6 ¶ 24. While Plaintiff stresses that he "never 'refused' the demand for his location," he also notes that he expressed "concern about the negative implication [of] law enforcement showing up to his place[] of residence[.]" *Id.* ¶ 25. He reports that he was "concerned also about further harassment that had been well-documented and ignored by Anne Arundel County Police Department"

---

[2] Documents attached to the motion filed by Defendants Shier, Rivers, and the County paint a different picture than the one provided by Plaintiff. According to the police incident report, filed at ECF 38-3, Herrera and King called 911 after Plaintiff made five calls in short sequence on June 8, 2021 and in each "told them that they will die and someone is going to jail," *id.* at 4. The report notes that Herrera and King both indicated they feared for their safety. *Id.* Moreover, it offers that Shier called Plaintiff's medical team, including psychiatrist Dr. Petrover, who said she was "concerned" about Plaintiff's mental health while he was off his medication and that he might "threaten himself or others." *Id.* This version of events is discussed further in the analysis section below.

("AACPD") and so suggested to Defendant Rivers that they meet "voluntarily at the [AACPD], Southern District located at 35 Stepney's Edge, Edgewater, MD 21037." *Id.* ¶ 26.

When Plaintiff arrived at the police department, he says, he asked "multiple officers, including Defendants Shier and Rivers [the "Officer Defendants"] whether [he] was under arrest." ECF 37, at 8 ¶ 32. According to Plaintiff, "Defendant Shier stated no, but that if Plaintiff did not agree to go to" the emergency room, "Plaintiff would be arrested." *Id.* Plaintiff further reports that Defendant Shier "never asked Plaintiff about his mental health status, including whether Plaintiff considered himself to be a threat or danger to himself or others . . . ." *Id.* ¶ 34. Plaintiff also says that Defendant Shier "informed Plaintiff that he had spoken to Plaintiff's mental health providers," which Plaintiff construes as "further manipulation to force Plaintiff into custody for an emergency evaluation." *Id.* at 8–9 ¶ 37. Per Plaintiff, Defendant Shier "ignored Plaintiff's reasonable explanation related to his concerns about being a target for harassment, the failure for Defendant Herrera to follow protocol, and Plaintiff's obvious cooperation[.]" *Id.* at 9 ¶ 38.

While still at the police department, Plaintiff "provided Defendants Shier and Rivers with a letter dated May 8, 2021, [sent by] Plaintiff to Anne Arundel County Police Chief Awad [ ], detailing at least six incidents of homophobic hate crimes, harassment, threats, defamation, and assault, all against Plaintiff" over the course of the preceding six months. ECF 37, at 9 ¶ 39. Plaintiff reports that, thereafter, approximately thirty-five minutes after he arrived at the police department, "an unknown [AACPD] [o]fficer drove Plaintiff to the Anne Arundel County Medical Center [ ] Emergency Department[.]" *Id.* at 10 ¶ 43. This action was taken pursuant to Md. Code Ann., Health-Gen ("Health Code") § 10-622, which governs the circumstances under which a third party, including a "peace officer who personally has observed the individual or the individual's behavior," may bring a petition for an emergency medical evaluation of an individual who has a

4

"mental disorder" and who presents a threat to themselves or others. Health Code §§ 10-622(b)(1)(i) and 10-622(a). Upon such petition's authorization by a peace officer, the individual may be committed for evaluation or involuntary admission. *Id.* §§ 10-624(a)(1)(ii) and 10-624(b)(1). Plaintiff alleges that while Defendant Rivers authorized a petition for an emergency evaluation of Plaintiff, he did not "witness[] Plaintiff behave in a threatening or dangerous manner." ECF 37, at 10 ¶ 47.

Upon arrival at the emergency room at approximately 3:49 p.m. on June 8, 2021, Plaintiff attests he "was met by several security guards who interrogated Plaintiff, searched Plaintiff's backpack, his clothes, and his naked body in front of nearly ten [ ] people including staff." ECF 37, at 10 ¶ 49. While at the hospital, Plaintiff saw Stephen Johnson, who Plaintiff notes "identified himself as a licensed clinical social worker, and not a physician as required under" the relevant Maryland state law. *Id.* at 12 ¶ 58. Plaintiff also alleges that he did not receive a psychiatric evaluation within six hours of admission and characterizes such an omission as another violation of Maryland law. *Id.* ¶ 60. According to Plaintiff, he was discharged from the emergency room "at approximately 2:12 [a.m.] and was not provided transportation," though AACPD "policy requires an individual detained under these circumstances to be provided transportation back to the place from which he was arrested[.]" *Id.* ¶ 61.

Plaintiff reports that, following his discharge from the emergency room, "Defendants Shier and Rivers never followed[] up with Plaintiff to ensure he was 'taking his medication' or to ensure he was no longer a threat to himself or others." ECF 37, at 13 ¶ 65. He further indicates that "many of the records related to this incident have been destroyed by Anne Arundel County, ostensibly due to document retention laws, as Plaintiff has sought for years records related to his arrest and detention." *Id.* ¶ 66.

Plaintiff originally brought this action on June 6, 2024, using the complaint template provided by the Clerk's office. ECF 1. On August 6, 2024, Defendant King moved to dismiss Plaintiff's complaint, ECF 22, as did Defendants Shier, Rivers, and the County, ECF 23. Plaintiff requested leave to file an amended complaint on September 12, 2024. ECF 29. On October 7, 2024, the Court dismissed as moot Defendants' pending motions and granted Plaintiff leave to file an amended complaint. ECF 36. Plaintiff filed the operative amended complaint later the same day. ECF 37.

Plaintiff's amended complaint articulates four general claims: Count I argues that the Maryland law regarding involuntary psychiatric hospitalization, Health Code § 10-601 et seq. (the "Evaluation Statute") is "unconstitutionally vague," ECF 37, at 15 ¶ 74; Count II purports to bring a claim pursuant to 42 U.S.C. § 1983 against all of the four individual Defendants, as well as the County, *id.* at 21 ¶ 89; Count III alleges a 42 U.S.C. § 1983 "failure to train" claim against Defendants Shier, Rivers, and the County, *id.* at 34 ¶ 125; while Count IV sets out a claim for conspiracy under 18 U.S.C. § 241 and Maryland state law, *id.* at 36. In response, Defendants Shier, Rivers, and the County have moved for dismissal or, alternatively, for summary judgment, ECF 38, at 1, while the Officer Defendants also challenge the adequacy of Plaintiff's service of process, ECF 38-1, at 13. Defendant King moves to dismiss Count II of Plaintiff's complaint. ECF 41-1, at 2. The docket reflects that Defendant Herrera has not been served; the returned proof of service form indicates that she has moved from the address Plaintiff provided to the process server. ECF 20, at 1.

## II.    **LEGAL STANDARD**[3]

### A.    Motion for Summary Judgment

Defendants Shier, Rivers, and the County have captioned their motion a "motion to dismiss" or, in the alternative, a "motion for summary judgment." ECF 38, at 1. When presented with a motion to dismiss or, in the alternative, a motion for summary judgement, the disposition of the motion "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

---

[3] Plaintiff acknowledges that he is "licensed as an attorney in California, Washington, D.C. and Maryland" but says he has never "held himself out" as a "juris doctor" or an "attorney" to any Defendant. ECF 37, at 1 ¶ 2. He further contends that he "has not practiced civil litigation since the two years after law school graduation in 2023." *Id.* In its October 7, 2024 order granting Plaintiff leave to file an amended complaint, the Court deferred resolution of the question of whether Plaintiff is entitled to liberal construction of pro se pleadings. ECF 35, at 1. However, at this time the Court determines that Plaintiff's pleading is not entitled to such liberal construction. The Court has previously determined that a *pro se* plaintiff could not be afforded greater latitude where she was a "licensed member of this bar." *Fisher v. PGCPS Bd. of Educ.*, Civ. No. 23-1693-BAH, 2024 WL 989558, at *2 (D. Md. Mar. 6, 2024); *see also DiPrete v. 950 Fairview St., LLC*, Civ. No. 15-00034, 2016 WL 6137000, at *4 n.4 (W.D. Va. Oct. 21, 2016), *appeal dismissed* Civ. No. 16-2335, 2017 WL 2241808 (4th Cir. May 22, 2017) (finding that no "special consideration or leniency is warranted" for a *pro se* attorney plaintiff); *Gordon v. Gutierrez*, Civ. No. 1:06-861, 2006 WL 3760134, at *1 n.1 (E.D. Va. Dec. 14, 2006) (determining that where a plaintiff represented that she was "an attorney, a law school graduate, and a member of a neighboring state's bar," she was not entitled to the liberal construction usually afforded to *pro se* plaintiffs). The situation here is much the same as in *Gordon*; Plaintiff represents that he has graduated law school and is a licensed member of the bars of three states. Pursuant to Federal Rule of Evidence 201(b), the Court takes judicial notice of the public Maryland Attorney Listing entry that indicates that "James Jason Dollar" has been an active member of the Maryland bar since March 25, 2024, with the attorney ID number 2403251001. In sum, Plaintiff undoubtedly possesses the legal training that most *pro se* litigants lack. Therefore, though the Court will review his pleadings with some degree of leniency, Plaintiff will not be afforded the same degree of liberal construction usually granted to *pro se* parties.

Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has notice that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When, as here, a movant expressly captions their motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261; *see also Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 657 (D. Md. 2021) ("Notably, 'the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion.'" (quoting *Ridgell v. Astrue*, Civ. No. 10-3280-DKC, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012))).

Ordinarily, a party opposing the conversion of a motion to dismiss into one for summary judgment must submit a Rule 56(d) affidavit setting forth their reasons for opposition. *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). However, failure to file a Rule 56(d) affidavit does not necessarily doom a party's opposition to conversion, and a court may consider whether the nonmoving party has "adequately informed the [ ] court that the motion [for summary judgment] is [premature] and more discovery is necessary." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). The Fourth Circuit has stressed that district courts are to afford *pro se* plaintiffs particular lenience with respect to the requirements of Rule 56(d). *Farabee v. Gardella*, 131 F.4th 185, 194–95 (4th Cir. 2025).

Here, Plaintiff has not filed a Rule 56(d) affidavit. And though he does in one place argue that he "should [ ] [be] granted the right to discovery [on] all these disputed material facts," he does not identify the purportedly disputed material facts in question that would necessitate

8

discovery. ECF 45, at 9. Rather, Plaintiff broadly asserts that Defendants have engaged in "material and deliberate lies by omission in all the documentation and exhibits," without providing additional clarity. *Id.* This situation is distinguishable from the one considered by the Fourth Circuit in *Farabee*, where the *pro se* plaintiff failed to conform with the Rule 56(d) requirements but still specifically argued that "summary judgment would be premature because he had not yet had an opportunity to conduct discovery." 131 F.4th at 192. Here, by contrast, Plaintiff not only does not identify a particular need for future discovery but also does not advance the argument that summary judgment is premature. Instead, Plaintiff engages with the summary judgment standard, as evidenced by his argument that he has "raised a genuine dispute" of material fact regarding Defendant Officers' entitlement to qualified immunity and so summary judgment is inappropriate. ECF 45, at 39. This suggests both Plaintiff's acknowledgment of, and assent to, conversion of the motion into one for summary judgment.

Finally, it bears repeating that while the plaintiff in *Farabee* "lack[ed] legal education, [could not] access legal materials, suffer[ed] from severe mental illness, and [was] institutionalized," 131 F.4th at 197, Plaintiff is not in the same position. Plaintiff is not arguing that he has any difficulty representing himself but rather that his status as an attorney is "irrelevant" because he "has not practiced civil litigation since the two years after law school graduation in 2023." ECF 37, at 1 ¶ 2. While the Court determined *supra* at note 3 that he is entitled to some leniency as a *pro se* party, Plaintiff is still a licensed attorney in three jurisdictions, including Maryland, and additionally has a master's degree in social work from the University of Maryland, Baltimore. ECF 37, at 1 ¶ 2, 2 ¶ 4. Plaintiff has the legal experience, access, and training that the *Farabee* plaintiff lacked; as such, the Court is less cautious about his failures to conform with the

Rule 56(d) requirements and to argue that summary judgment is premature. The Court will therefore treat the motion filed by Rivers, Shier, and the County as one for summary judgment.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 608 F. Supp. 3d 369, 373 (E.D. Va. 2022) (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)).

### B.    Motion to Dismiss

Defendant King has filed a motion to dismiss Count II. ECF 41-1, at 2. Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual

10

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III.    ANALYSIS

Before proceeding to an analysis of the substantive claims at issue, the Court will consider Plaintiff's motions to seal, ECFs 47 and 54; his motion to amend his response in opposition with two additional exhibits, ECF 53, and his motion for leave to file a surreply, ECF 52.

Plaintiff's motion to seal at ECF 47 requests that both of his responses in opposition, ECF 45 (response as to the motion filed by Shier, Rivers, and the County) and ECF 46 (response to the motion filed by King), be sealed to protect sensitive medical information contained therein. The motion at ECF 54 makes the same request for the same reasons as to the additional exhibits offered in Plaintiff's motion to amend at ECF 53. Defendants do not oppose either motion to seal. Local Rule 105.11 governs the sealing of all documents filed in the record and states in relevant part: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Local Rule 105.11 (D. Md. 2018). "[S]ensitive medical or personal identification information may be sealed," although not where "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011). Here, the filings Plaintiff requests be sealed

11

include sensitive medical information, and because such information is integral to his claims, redaction would render the documents unreadable. The Court will therefore grant both motions to seal.

Plaintiff has also filed a motion at ECF 53 to amend his response in opposition, ECF 45 (response to the motion to dismiss or alternatively for summary judgment made by Defendants Shier, Rivers, and the County at ECF 38). Plaintiff indicates that counsel for Shier, Rivers, and the County are opposed, while counsel for King has not replied, ECF 53, at 2, though no Defendant has filed a response in opposition on the docket. The proposed exhibits are entries in Plaintiff's electronic medical chart, and Plaintiff says he "discovered" these "previously unknown entries" while reviewing his chart "in preparation for an appointment" in January 2025. *Id* at 1. Both proposed exhibits bear an internal date of June 8, 2021. *See* ECF 53-2, at 1, 3.

Rule 15(d) of the Federal Rules of Civil Procedure provides that a court "may permit supplementation " of a pleading if such supplementation "set[s] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Despite Plaintiff's status as a licensed attorney and thus his distinction from typical *pro se* plaintiffs, the Court has explained *supra* at note 3 that it will afford him at least some degree of leniency; therefore, in keeping with that determination, Plaintiff will be permitted to supplement his response in opposition with reference to the "previously unknown" medical records. The Court will grant Plaintiff's motion to amend the response.

Finally, Plaintiff requests leave to file a surreply, ECF 52. "As a general rule, this Court will not allow parties to file sur-replies." *Nicholson v. Volkswagen Grp. of Am., Inc.*, Civ. No. 13-3711-RDB, 2015 WL 1565442, at *3 (D. Md. Apr. 7, 2015) (citing Local Rule 105.2(a) (D. Md.)); *see also Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015) ("[s]urreplies are

highly disfavored in this District"). "A party moving for leave to file a surreply must show a need

for a surreply." *MTB Servs., Inc. v. Tuckman-Barbee Const. Co.*, Civ. No. 12-02109-RDB, 2013

WL 1224484, at *6 (D. Md. Mar. 26, 2013). The court may allow a plaintiff to file a surreply if

"a defendant raises new legal issues or new theories in its reply brief," *id.* (citing *TECH USA. Inc.*

*v. Evans*, 592 F. Supp. 2d 852, 862 (D. Md. 2009)), and "when the moving party would be unable

to contest matters presented to the court for the first time in the opposing party's reply," *id.*; *see*

*also Khoury v. Meserve*, 268 F. Supp. 2d 600, 605–06 (D. Md. 2003). However, "[a] motion for

leave to file a surreply may be denied when the matter addressed in the reply is not new." *Marshall*

*v. Capital View Mut. Homes*, Civ. No. 12-3109-RWT, 2013 WL 3353752, at *3 (D. Md. July 2,

2013); *see also Dones v. Brennan,* 147 F. Supp. 3d 364, 373 (D. Md. 2015) (denying motion for

leave to file a surreply where a plaintiff sought "merely to re-open briefing on the issues raised").

Here, Defendants' reply, ECF 51, introduced no new arguments or theories of the case; instead,

Plaintiff's proposed surreply seeks to reiterate the points Plaintiff has already made in other filings.

The Court will therefore deny Plaintiff's motion for leave to file a surreply.

### A.    Adequacy of Service

As an initial matter, the Court addresses the argument raised by Rivers and Shier (the

"Officer Defendants") regarding the adequacy of Plaintiff's service of process. The Officer

Defendants assert that Plaintiff's proof of service indicates that he served both summons on a

Lieutenant Lawson at 35 Stepney Lane, Edgewater, Maryland 21037. ECF 38-1, at 14. The

Officer Defendants contend that there is "no evidence" that Lawson was "authorized" to accept

service on behalf of either Rivers or Shier and that 35 Stepney Lane is neither defendant's

"residence or usual place of abode" but instead the location of the AACPD Southern District. *Id.*

Plaintiff responds that he "acted in good faith" in serving the Officer Defendants, that it was

"onerous and expensive (and actually intrusive) to get a skip trace or use other means to obtain

their home address," and that Officer Defendants' counsel has not only "made multiple appearances" but also "accepted the paperwork and has such accepted service." ECF 45, at 41.

Though the Officer Defendants are correct in noting that Plaintiff did not effectuate service of process in accordance with the provisions of the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 4(e), "insufficient service of process would not, alone," warrant dismissal of Plaintiff's complaint. *Ferebee v. United States*, Civ. No. 16-3482-GJH, 2017 WL 3141914, at *2 n.5 (D. Md. July 24, 2017). Where the process "gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction." *Curtis v. Md. Envtl. Serv.*, Civ. No. 17-2728-RDB, 2018 WL 1394020, at *2 (D. Md. Mar. 19, 2018) (quoting *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)). Here, the Officer Defendants have actual notice of this action, and both have entered an appearance through counsel, *see* ECF 16. As such, the Court declines to dismiss Plaintiff's claims against the Officer Defendants on grounds of improper service.

## B.    Constitutionality of Md. Code Ann., Health-Gen § 10-601 et seq.

Count I of Plaintiff's complaint states that the Maryland Evaluation Statute is "unconstitutionally vague and violates due process under the Fourteenth and Fifth Amendments of the U.S. Constitution." ECF 37, at 15. In particular, Plaintiff challenges the Evaluation Statute's provisions regarding petitions for emergency evaluation, *see* Health Code § 10-622(a). Section 10-622(a) provides that "[a] petition for emergency evaluation of an individual may be made under this section only if the petitioner has reason to believe that the individual: (1) [h]as a mental disorder; and (2) [p]resents a danger to the life or safety of the individual or of others." Plaintiff argues that section 10-622(a) is too "vague" to pass constitutional muster in that it improperly fails to define "danger" and "emergency" and moreover does not offer clear guidance on what

14

constitutes "good faith" on the part of an evaluating petitioner. ECF 37, at 15 ¶ 74, 16 ¶¶ 77–78, 17 ¶ 79.

Defendants note that Count I is not brought against any individual or entity in particular but instead represents a facial challenge to the Evaluation Statute, and so "Defendants do not need to respond to this claim." ECF 38-1, at 15. Further, Defendants contend that the Fourth Circuit has previously established that the Evaluation Statute passes constitutional muster and so the Court should dismiss this count of Plaintiff's complaint. *Id.* (citing *S.P. v. City of Takoma Park, Md.*, 134 F.3d 260, 268 (4th Cir. 1998) and *Gooden v. Howard Cnty., Md.*, 954 F.2d 960, 968 (4th Cir. 1992)). In response, Plaintiff points out that Defendants' citations are "woefully outdated," ECF 45, at 11, and reiterates that section 10-622(a) contains "unconstitutionally vague language," *id.* at 12. Elsewhere in his response, Plaintiff argues more specifically that while the older version of the Evaluation Statute contained language about a "clear and imminent danger," the current statute does not, and thus the older caselaw is inapplicable. *Id.* at 31. Plaintiff also references a third-party study of state involuntary commitment statutes and purports that this study rated the Maryland Evaluation Statute poorly. *Id.* at 13.

Notwithstanding any external evaluation of the relevant Maryland laws, this Court is bound by Fourth Circuit precedent that the Evaluation Statute does not offend the Constitution. The Court acknowledges that earlier versions of the statute, including the one at issue in *S.P. v. City of Takoma Park, Md.*, contained language requiring that a person have a mental disorder and pose a "clear and imminent danger of [ ] doing bodily harm" to themselves or others in order to warrant a petition for emergency evaluation. Md. Code, Health-Gen. § 10-622(a) (2001) (amended 2003). The Maryland General Assembly amended the statute in 2003 to the current language requiring a person to have a mental disorder and to "present[] a danger to the life or safety of the individual

or of others." *See* 2003 Md. Laws Ch. 441 (H.B. 668). Regardless, the current statute does include

the requirement that a petition should "[c]ontain a description of the behavior and statements of

the emergency evaluee or any other information that led the petitioner to believe that the

emergency evaluee has a mental disorder and that the individual presents a danger to the life or

safety of the individual or of others." Health Code, § 10-622(c)(1)(vi). This requirement imposes

an objective standard on the emergency evaluation process, as individuals are determined to

present a danger to the life or safety of themselves or others not on "arbitrary" grounds, as Plaintiff

argues, but on articulable reasons. ECF 37, at 19 ¶ 82.

   Moreover, while the Fourth Circuit referenced the older "clear and imminent danger"

language in its analysis in *S.P.*, its consideration of the statute's constitutionality did not rest on

the statute's inclusion of this phrase. Rather, the Fourth Circuit specifically noted that any "facial

challenge" to the statute's constitutionality would be unavailing considering "the numerous court

decisions upholding the constitutionality of this specific statute and other similarly phrased statutes

allowing police officers to involuntary[il]y detain individuals if they have *reason to believe* or a

*reasonable belief* that the individual is mentally ill and poses a danger to herself or others." *S.P.*,

134 F.3d at 271 (emphasis added). The *S.P.* court's primary consideration, therefore, was not the

presence of the "clear and imminent danger" language, nor whether "danger" was defined, but

instead the statute's emphasis on "reasonable belief." *Id.* This same language appears in the

current Evaluation Statute, which authorizes petitions for emergency evaluations of individuals

"only if the petitioner *has reason to believe* that the individual has a mental disorder and presents

a danger to the life or safety of the individual or others." Health Code § 10-622(a) (emphasis

added). Regardless of the change in the "clear and imminent danger" language, the current

iteration of the Evaluation Statute therefore conforms to the standard articulated by the Fourth Circuit in *S.P.* in that it contains the same "reasonable belief" requirement as the older version.

In sum, the Fourth Circuit found the older version of the statute constitutional not because it used "clear and imminent danger" language nor because it provided a definition of "danger" or "emergency" (like the current statute, it did not, *see* 2001 Maryland Laws Ch. 270 (H.B. 770)) but because the statute's specification that a petitioner have "reasonable belief" was "consistent with the Fourth Amendment's requirement that [officers] have probable cause to lawfully detain an individual for an emergency psychiatric evaluation." *S.P.*, 134 F.3d at 271–72. The same specification is present in the current Evaluation Statute. This Court does not have the authority to overrule the determination of a higher court and is thus constrained from finding the Evaluation Statute unconstitutional on the grounds that Plaintiff advances.

### C.    42 U.S.C. § 1983 Claims

Plaintiff purports to bring claims pursuant to "42 U.S.C. § 1983" (Count II) and "42 U.S.C. § 1983 failure to train" (Count III), the former against Defendants Shier, Rivers, Herrera, and King, and the latter against Defendants Shier, Rivers, and the County. ECF 37, at 21, 34.

Under 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See also Filarsky v. Delia*, 566 U.S. 377 (2012). Importantly, section 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).

17

In other words, section 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under section 1983, a plaintiff must allege that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States. *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009). "The statutory color-of-law prerequisite is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar*, 859 F.3d at 245.

        1.  Officer Defendants are entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claim

At the outset, the Court notes that Plaintiff's complaint only cursorily identifies, if it does at all, the particular underlying rights at issue in his section 1983 claims against the Officer Defendants. Plaintiff generally appears to allege that Defendant Rivers's report contains "omissions" of certain of Plaintiff's statements. ECF 37, at 23 ¶ 93(d)(i)–(iii). Plaintiff also takes issue with Defendant Rivers's "fail[ure] to report that he had prior interactions with Plaintiff" in that Defendant Rivers's name was mentioned in the letter Plaintiff sent to Chief Awad. *Id.* ¶ 93(d)(iv). Similarly, Plaintiff alleges that Defendant Shier made "several key omissions" in a sworn affidavit he provided concerning the events of June 8, 2021. *Id.* at 28 ¶ 114 (citing ECF 23-5, sworn affidavit of Defendant Shier, signed July 25, 2024; also produced at ECF 38-5). Overall, Plaintiff's allegations against Defendants Rivers and Shier largely consist of general accusations that both officers provided "deliberate omissions of certain facts, cherry-picking other facts, and downright falsehoods in their respective [a]ffidavits." *Id.* at 31 ¶ 121. And though Plaintiff briefly cites to the Fourth, Fifth, Sixth, and Fourteenth Amendments in a parenthetical comment, he

appears to do so only in relation to his claim regarding the general constitutionality of the Evaluation Statute, not the specific conduct of any of the Defendants, and indeed suggests that his reference to specific amendments relates to what he "stated above." *Id.* at 26 ¶ 102. However, the Court has thoroughly reviewed the Amended Complaint and cannot identify a prior reference to any particular constitutional provision, save for Plaintiff's citation to the Fifth and Fourteenth Amendments in Count I, and so presumes that the parenthetical offered in the section 1983 discussion refers back to Plaintiff's claims regarding the constitutionality of the Evaluation Statute. *Id.* at 26 ¶ 102, 30 ¶ 116.

Nevertheless, to the extent that Plaintiff's complaint could be said to allege a violation of his constitutional rights, he seems to suggest that Defendant Rivers's "cherry-picked information" supported the "false narrative that Plaintiff was a danger to himself or others" and thus allowed Rivers to detain Plaintiff for evaluation, which appears to inferentially implicate the Fourth Amendment's guarantee of freedom from unreasonable seizure. ECF 37, at 23 ¶ 94. As to Defendant Shier, Plaintiff alleges that Shier "interrogated" him for "approximately thirty-five minutes" once he arrived at the police station but failed to provide any *Miranda* warning and thereby ran afoul of the Fifth Amendment. *Id.* at 27 ¶ 108, 30 ¶ 117. The Court will therefore address Plaintiff's potential claims under the Fourth and Fifth Amendments in turn.

### i.    *Plaintiff's claim under the Fourth Amendment*

The Fourth Amendment guarantees, *inter alia*, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. To comply with the Fourth Amendment, a peace officer "must have probable cause to believe that the individual posed a danger to herself or others before involuntarily detaining the individual." *S.P.*, 134 F.3d at 266. The Fourth Amendment is not offended where officers detain an individual when "'the facts and circumstances within their knowledge and of which they had

19

reasonably trustworthy information were sufficient to warrant a prudent man' to believe that the person poses a danger to himself or others." *Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 334 (4th Cir. 2009) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "Probable cause" does not have a settled definition, *United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010), but is rather a "'fluid concept' that cannot be 'reduced to a neat set of legal rules.'" *Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). "An assessment of the presence of probable cause must be based on the totality of the relevant circumstances, rather than on the technical or rigid demands of a formulaic legal test." *United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011). The Fourth Circuit has found that officers have probable cause to detain an individual for a psychiatric evaluation where they have both received information as to the individual's mental status from a third party (*e.g.*, through a 911 call) and have had the opportunity to observe the individual in person. *S.P.*, 134 F.3d at 267–68; *see also Costley v. City of Westminster*, Civ. No. 16-1447-GLR, 2017 WL 35437, at *7 (D. Md. Jan. 4, 2017), *aff'd sub nom. Costley v. Steiner*, 689 F. App'x 753 (4th Cir. 2017).

Here, Defendants Shier, Rivers, and the County argue that there was "ample probable cause" to have Plaintiff taken for an emergency evaluation and that the officers "reasonably believed that [Plaintiff] posed a danger to himself or others." ECF 38-1, at 20. In support of this position, they attach several documents to their motion, including a copy of the petition for emergency evaluation as well as copies of both narrative and timestamped incident reports. *See* ECF 38-3.

The narrative incident report reflects the following version of events: Defendants Herrera and King called 911 at approximately 1:16 p.m. on June 8, 2021 to report that Plaintiff made several phone calls in which he "told employees [at LabCorp] that they would either die or go to

20

jail today." ECF 38-3, at 3–4. When Shier and Rivers arrived at the LabCorp location, Herrera

and King informed the officers that Plaintiff had called "at 11:04 a.m., 11:06 a.m., 11:09 a.m., and

12:37 p.m. and told them each time that they will die and someone is going to jail." *Id.* at 4.

Herrera and King reported being frightened for their safety. *Id.* After King provided Rivers with

the telephone number Plaintiff used to make the calls, Rivers was eventually able to make contact

with Plaintiff, who told Rivers that the LabCorp employees were "harassing him" and that their

version of the events was "an absolute lie." *Id.* Meanwhile, Shier contacted Plaintiff's healthcare

team, including therapist Dr. Lavon Atkinson, who advised that Plaintiff was not taking prescribed

medication, and psychiatrist Dr. Debra Petrover, who expressed "concern" that Plaintiff "may

threaten himself or others." *Id.* When Plaintiff arrived at the police station, the report indicates,

he asked if he was under arrest and Rivers responded that he was not. *Id.* Plaintiff then gave

Rivers a copy of the letter he had sent to Chief Awad regarding the alleged instances of harassment

Plaintiff had experienced over the previous years. *Id.* Rivers notes in the report that he "felt it

best" that Plaintiff be petitioned for an emergency evaluation and left Plaintiff "in the custody of

[another officer] to get transported to Anne Arundel Medical Center[.]" *Id.* at 5. The timestamped

version of the incident report provides the same version of events, *see id.* at 7–9, as does the copy

of the petition for emergency evaluation, *see id.* at 10–12. Defendants Shier and Rivers further

provide sworn affidavits attesting to the account reflected in the incident report. *See* ECFs 38-4,

38-5.

In response, Plaintiff alleges that King and Herrera simply "lied" to the officers in

retaliation for Plaintiff "call[ing] [Herrera] out for violating his rights when she did not follow

procedure."[4]  ECF 45, at 6.  He also argues that because Rivers never "proved" at the time of filing

the petition that Plaintiff "was a danger to himself or others," nor "even asked [that] basic question"

of Plaintiff, but instead allegedly "chose to believe Herrera's provably false statements," Plaintiff's

transportation to the hospital was unlawful.[5]  *Id.* at 14.  In support of this position, Plaintiff attaches

a copy of the letter he sent to Chief Awad as well as the same copy of the timestamped incident

report provided by Defendants.  *See* ECFs 45-1, 45-2.  On November 27, 2024, two days after

filing his response in opposition, Plaintiff also filed a supplement to the opposition, ECF 50, which

appears to contain the discharge summary from Plaintiff's evaluation at Anne Arundel County

Medical Center.  It also includes copies of two complaints Plaintiff made to the AACPD, the first

dated August 31, 2022 and alleging an incident of abuse that occurred in November 2020, and the

second dated July 20, 2023 and reflecting Plaintiff's complaints against Shier and Rivers.  ECF

50-1, at 1–4.

　　　None of the evidence presented by Plaintiff disputes the account provided in the incident

reports and the petition for emergency evaluation.  The two exhibits originally attached in

Plaintiff's response in opposition were also offered by Defendants, and Plaintiff does not explain

how they support his allegations.  Nor do either of the supplementary exhibits provide factual

---

[4] The incident report reflects that upon the officers' arrival at LabCorp following the 911 call, Herrera told Rivers that Plaintiff had indeed come to LabCorp for bloodwork the previous day but that he made "random" statements such as "don't believe the rumors."  ECF 38-3, at 4.  The incident report further indicates that Herrera reported that Plaintiff also said "he was off his prescribed medications" and that he later called back to say he was "a registered sex offender."  *Id.*

[5] Plaintiff also takes issue with the notation that Herrera said that Plaintiff identified himself as a registered sex offender.  ECF 45, at 16–17.  However, there is no indication that the officers relied on that representation in making the petition for an emergency evaluation.  Rather, the petition itself says that the evaluation was being sought because Plaintiff "made statements" that he was going to "harm others," and there is no reference to Herrera's comment that Plaintiff had told her he was registered as a sex offender.  ECF 38-3, at 10.

support for Plaintiff's contentions. The excerpt from the hospital report indicates that Plaintiff was "calm and cooperative upon discharge," that he did not have any "current homicidal or suicidal thoughts," and that he had been admitted because he had was "noncompliant with his medications" and "[a]pparently [ ] made threats to staff at a pharmacy today regarding lab work he had done[.]" ECF 50, at 1. These statements from the emergency room providers do not contradict anything in the incident report regarding the threats Plaintiff allegedly made earlier in the day. Meanwhile, the latter complaint Plaintiff made to the police department merely reiterates the same claims that he brings in this lawsuit, while the former details an instance of verbal abuse in 2020 that Plaintiff says officers failed to adequately address. *See* ECF 50-1. The Court credits Plaintiff's claim that Plaintiff feels he is a target for abuse, and further understands that this feeling would unquestionably cause Plaintiff distress, but neither exhibit provides factual support for Plaintiff's suggestion that he was detained in violation of the Fourth Amendment.

This conclusion is not altered by the two additional exhibits the Court has allowed Plaintiff to add to his response. The first exhibit is a record of a medical follow-up telephone encounter between Plaintiff and a social worker entered on June 8, 2021, ECF 53-2, at 1–2; the second is a progress note from Plaintiff's therapist Dr. Lavon Atkinson, also dated June 8, 2021, which reflects that Dr. Atkinson received a call from the police "regarding [a] threatening statement made to CVS pharmacy" and thereafter "connected with Dr. Petrover who called police officer back," as Dr. Atkinson was returning from vacation and did not have "current information," *id.* at 3. Plaintiff asserts that the first additional exhibit shows that he "was not 'off his medication' and he was not suicidal," ECF 53-1, at 4, while the second purportedly reveals key inconsistencies, such as Dr. Atkinson "get[ting] the name of the pharmacy wrong" and "not report[ing] in this note anything specific about a conversation with Shier," *id.* at 5. Plaintiff also calls attention to what

23

he calls "the problem" of the timing of these entries, noting that the telephone call with the social worker, though logged at 6:01 p.m. on June 8, 2021, "obviously [occurred] prior to any alleged threats" since Plaintiff was in the hospital at this time, and also that the note from Dr. Atkinson was entered at 4:52 p.m. on June 8, well after Shier supposedly spoke to Atkinson in the early afternoon. *Id.* at 5–6.

Plaintiff's characterizations of these entries are belied by the contents of the exhibits themselves. The social worker's observation that Plaintiff was not suicidal does not bear on the issues presented here: the incident reports clearly indicate that the officers filed a petition for emergency evaluation pursuant to alleged homicidal threats, not suicidal ones, and the Court has no basis on which to draw the inference Plaintiff does, namely, that the absence of suicidality necessarily means the absence of homicidality as well. Further, the social worker's entry states plainly, contrary to Plaintiff's characterization, that he had indeed stopped taking a prescribed mood stabilizer "due to potential allergic rash." Likewise, contrary to Plaintiff's intimations, the entry from Dr. Atkinson does not clearly implicate any evidence of conspiracy on the part of the Defendants; as Plaintiff himself recognizes for the social worker's note, the entries on the medical chart do not appear to be entered contemporaneously with the events themselves, and it is therefore unremarkable that Dr. Atkinson should make her entry at some point after speaking to the officers. And the supposed "inconsistency" of Dr. Atkinson saying CVS when the pharmacy in question was a Walgreens store is of no consequence—both are large national chains and similar businesses in many respects. Finally, the lack of detail in the entry as to Dr. Atkinson's conversation with the police does not, on its own, support Plaintiff's conclusion that the Defendant Officers, and Defendant Shier in particular, "provided knowingly incorrect" information regarding their conversation with Dr. Atkinson. ECF 53-1, at 7. The chart entry is simply not specific enough as

24

to what Dr. Atkinson did or did not say in the conversation with the police, and so does not reasonably support an inference that any party is, as Plaintiff claims, omitting or embellishing the facts. In sum, these additional exhibits provide no evidentiary basis on which the Court might conclude that an unlawful seizure occurred.

Rather, it is uncontroverted that the Officer Defendants received a 911 call indicating that Plaintiff had made threats to kill King and Herrera. Though Plaintiff repeatedly contends that neither King's nor Herrera's accounts were credible and that they "lied so badly and so often," he offers no evidence to support this assertion. ECF 45, at 4. The factual evidence before the Court amply demonstrates that the Defendant Officers had probable cause to detain Plaintiff. They received a 911 call indicating that Plaintiff had made threats to harm King and Herrera; they spoke at one point to Plaintiff's therapist Dr. Atkinson and heard from Plaintiff's psychiatrist Dr. Petrover that he was not taking his prescribed medication and might harm himself or others; and observed him in person over a protracted period of thirty-five minutes. Like the officers in both *Costley* and *S.P.*, the factual evidence here reflects that Defendant Officers had access to the initial reports of the threat as well as personal observation of Plaintiff, and moreover had the benefit of speaking at length with Plaintiff's psychiatrist. *See S.P.*, 134 F.3d at 267–68; and *Costley*, 2017 WL 35437, at *9. Plaintiff fails to contradict this account, and instead largely repeats his own conclusion that Defendants lied (or relied on lies).[6] Such "conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 603 F. Supp.

---

[6] Relatedly, Plaintiff's contention that Defendant Rivers never "proved" that Plaintiff was a danger to himself or others misapprehends the relevant consideration under both the Fourth Amendment and the Evaluation Statute, though only the former confers a federal right actionable under section 1983. Indeed, as explained above, the language of the Evaluation Statute tracks the Fourth Amendment standard that a peace officer "must have probable cause to believe that the individual posed a danger to herself or others before involuntarily detaining the individual." *S.P.*, 134 F.3d at 266; *see also* Health Code § 10-622(a).

3d at 373. As there is no genuine dispute of fact as to whether Plaintiff's Fourth Amendment rights were violated, the Officer Defendants are entitled to summary judgment on this claim.

And even if there did exist a dispute as to the constitutionality of Plaintiff's detention for a psychiatric evaluation, the Officer Defendants would still be entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The immunity [inquiry] balances two important interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Atkinson v. Godfrey*, 100 F.4th 498, 504 (4th Cir. 2024) (quoting *Pearson*, 555 U.S. at 231). "The protection applies regardless of whether the government official's error is a mistake of law, a mistake of fact or a mistake based on mixed questions of law and fact." *Id.* (citing *Pearson*, 555 U.S. at 231). "It gives 'government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citing *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam)).

Qualified immunity "typically involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 898 (4th Cir. 2016) (internal quotation marks omitted). The second step of the analysis acknowledges that even officers who violate a plaintiff's constitutional rights may be entitled to qualified immunity, provided that the right in question is not so clearly established "that every reasonable official would have understood that what he is doing violates that right." *Reichle*

*v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up) (citation omitted). "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand what he is doing is unlawful." *Garrett v. Clarke*, 74 F.4th 579, 584 (4th Cir. 2023) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).

"To determine whether a right is clearly established, [the Court must] assess whether the law has 'been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state.'" *Wilson v. Prince George's Cnty., Md.*, 893 F.3d 213, 221 (4th Cir. 2018) (citing *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998)). "A right need not be recognized by a court in a specific factual context before such right may be considered 'clearly established' for purposes of qualified immunity." *Id.* (citations omitted). However, courts are "not to define clearly established law at a high level of generality," as "[s]pecificity is especially important in the Fourth Amendment context." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (internal citations omitted). "Defining the right at a high level of generality 'avoids the crucial question whether the offic[er] acted reasonably in the particular circumstances that he or she faced.'" *Atkinson*, 100 F.4th at 505 (citing *Wesby*, 583 U.S. at 63) (alteration in *Atkinson*). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle*, 566 U.S. at 664 (internal quotation marks omitted).

The Fourth Circuit has previously held that officers responding to scenarios factually similar to the one at issue here are entitled to qualified immunity. In *S.P.*, the Fourth Circuit determined that where officers were "responding to an emergency call from a concerned third-party alerting them of a potentially dangerous situation" and had the opportunity to observe the party themselves, they properly came to the conclusion that "detaining [the individual] was not only reasonable, but prudent." 134 F.3d at 267–68 (citing *Gooden*, 954 F.2d at 969). Therefore,

the court concluded, "there was no clearly established authority available which would have notified these officers that their conduct was unlawful." *Id.* More recent Fourth Circuit caselaw confirms this approach. *See Raub v. Campbell*, 785 F.3d 876, 884 (4th Cir. 2015) (holding that it "was not clearly established" that a mental health evaluator's recommendation that a patient be detained was "unreasonable" where the evaluator weighed the report of law enforcement officers, the content of the patient's social media, statements from the patient's colleagues, and the evaluator's own observations in making their decision).

In addition, other courts in this district have held that peace officers acted reasonably in detaining individuals for a mental health evaluation when those individuals were engaging in "irrational behavior," *Boyd v. Armstrong*, Civ. No. 17-2849-ELH, 2019 WL 1440876, at *21 (D. Md. Mar. 29, 2019), or were reported in a 911 call to be suicidal and observed acting in a "hostile" and "unstable" manner, *Costley*, 2017 WL 35437, at * 10. The Court therefore cannot say that it was "clearly established" that the Officer Defendants might offend the Fourth Amendment in detaining Plaintiff in the circumstances herein—i.e., after receiving a 911 call indicating that Plaintiff made homicidal threats, hearing from Plaintiff's psychiatrist that he was not taking his medication and that she was concerned he might harm himself or others, and observing Plaintiff themselves. As such, the Officers are entitled to qualified immunity on Plaintiff's claim of unreasonable seizure.

### ii.    *Plaintiff's claim under the Fifth Amendment*

Plaintiff asserts that that Shier violated Plaintiff's "[Fifth] Amendment right against self-incrimination" when Shier "interrogated" Plaintiff for "approximately thirty-five minutes" without issuing a *Miranda* warning. ECF 37, at 27 ¶ 108, 30 ¶ 117. However, Plaintiff cannot bring a Fifth Amendment claim under 42 U.S.C. § 1983 based on a violation of *Miranda*. As the Supreme Court has recently reiterated, "a *Miranda* violation" is not "the same as a violation of the Fifth

Amendment right." *Vega v. Tekoh*, 597 U.S. 134, 136 (2022) (citing *Dickerson v. United States*, 530 U.S. 428, 440 (2000)). Rather, *Miranda* is a "judicially crafted prophylactic rule" that ensures a remedy through "exclusion of unwarned statements," not a "federal law that can provide the ground for a [section] 1983 claim." *Id.* (internal quotation marks omitted). As such, the Court explained, "a violation of *Miranda* does not necessarily constitute a violation of the Constitution, and therefore such a violation does not constitute the deprivation of a right secured by the Constitution for the purposes of [section] 1983." *Id.* (cleaned up). Other district courts in the Fourth Circuit have, applying *Vega*, also held that a putative Fifth Amendment claim based on a failure to provide a *Miranda* warning is not actionable under section 1983. *See, e.g., Scott v. Malone*, No. 223CV03532, 2024 WL 1838714, at *4 (D.S.C. Feb. 27, 2024); *Patterson v. Spence*, Civ. No. 5:23-3250, 2024 WL 1010311, at *3 (E.D.N.C. Feb. 20, 2024), *appeal dismissed*, Civ. No. 24-6205, 2024 WL 4018727 (4th Cir. May 13, 2024); *Fogg v. U.S.A. Transp. Sec. Admin.*, No. 5:22-CV-124, 2023 WL 3635622, at *6 (E.D.N.C. May 24, 2023). The same result is warranted here.

### 2. The County is entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claims

Plaintiff purports to bring his general 42 U.S.C. § 1983 claims against the County as well as the four individual Defendants. ECF 37, at 21. The Supreme Court established in *Monell v. Department of Social Services* that "municipalities and other local government units [are] included among those persons to whom section 1983 applies." 436 U.S. 658, 690 (1978). *Monell* liability attaches to a municipality or other local governmental entity in a section 1983 action "only where the municipality *itself* causes the constitutional violation at issue," such as if it causes a deprivation through an official custom, practice, or policy. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). Plaintiff does not allege any such conduct on the part of the County.

Moreover, such a claim generally "cannot lie 'where there is no underlying constitutional violation by the [government] employee.'" *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 459 (D. Md. 2020) (quoting *Young v. City of Mt. Rainier*, 238 F.3d 567, 579 (4th Cir. 2001), *abrogation on other grounds recognized by Short v. Hartman*, 87 F.4th 593, 609 (4th Cir. 2023)).

Plaintiff also brings a claim for "42 U.S.C. § 1983 failure to train" against the County.[7] ECF 37, at 34. The need for an underlying constitutional violation to exist extends to such "failure to train" claims as well. *See Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised."). As discussed above, Plaintiff has not shown any underlying violation of his rights, and so he does not have any viable section 1983 claim against the County.

### 3. Plaintiff's 42 U.S.C. § 1983 claims against Defendants King and Herrera are dismissed

Plaintiff also asserts a 42 U.S.C. § 1983 claim against Defendants King and Herrera. Defendant King has moved for dismissal on the grounds that she is not a state actor and so may not be sued pursuant to section 1983. Plaintiff's response to King's motion does not contest this argument; instead, it explicitly "acknowledges" that King is not a state actor but repeats Plaintiff's allegations that King (and Herrera) "conspire[d] with law enforcement" in having Plaintiff temporarily involuntarily committed. ECF 46, at 3–4. Because Plaintiff's response recognizes that section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful," *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (internal quotations

---

[7] Plaintiff's complaint also contends that the Officer Defendants are liable for this claim as well. ECF 37, at 34. There is no indication that the Officer Defendants were in a position to provide, control, or in any way influence training within the police department, but even if they were, they cannot be held liable on a "failure to train" claim for the same reasons as articulated for the County.

omitted), the Court will grant the motion to dismiss Count II of Plaintiff's complaint as brought

against Defendant King.[8] Though the docket reflects that Plaintiff has not effectuated service upon

Defendant Herrera, the Court will *sua sponte* dismiss the section 1983 claim against Herrera as

well, because Plaintiff has not pleaded that she is a state actor, and it does not appear that it is even

possible for him to do so. *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006)

("Where a complaint plainly fails to state a claim for relief, a district court has 'no discretion' but

to dismiss it.") (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure

§ 1357 (2d ed. 1990)).

### D.    Conspiracy Claims

Plaintiff purports to bring claims for "[a] violation of 18 U.S.C. § 241" as well as "civil

conspiracy" against Defendants. ECF 37, at 36.

18 U.S.C. § 241 establishes criminal penalties for conspiracies "to injure, oppress, threaten,

or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to

him by the Constitution or laws of the United States, or because of his having so exercised the

same." This is a federal criminal statute, and as such provides Plaintiff with no "private right of

action to pursue claims" thereunder. *Robertson v. Foster*, Civ. No. 16-3610-ELH, 2017 WL

1104664, at *6 (D. Md. Mar. 23, 2017) (collecting cases). The Court will therefore dismiss with

prejudice Plaintiff's claims under 18 U.S.C. § 241. *See id.*

---

[8] Further, there is no indication that the actions of Herrera or King had any "nexus" to state activity. *Mentavlos,* 249 F.3d at 311 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1005 (1982)). "[C]hallenged activity may be found to be state action where 'the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state.'" *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 52 (1999)). Such is the case where a private actor has been "delegated a public function by the State." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296 (2001). Plaintiff asserts that Herrera and King "set into motion actions taken by the government and Defendants Shier and Rivers," ECF 37, at 19 ¶ 82, but does not contend, much less demonstrate, that either were delegated any kind of prerogative usually in the domain of the state.

Plaintiff also alleges that Defendants Rivers, Shier, Herrera, and King engaged in civil conspiracy. ECF 37, at 36–41 ¶ 133–147. Specifically, he contends that the four Defendants "all participated in what collectively amounted to an understanding that their individual and collecti[ve] actions taken against Plaintiff would set into motion a scheme to punish Plaintiff by forcing him into detention" in the emergency room. *Id.* at 37 ¶ 136. "Under Maryland law, civil conspiracy is defined as the 'combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff.'" *Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014) (quoting *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005)). "To prevail, a plaintiff must demonstrate both the agreement itself, and also the commission of an overt act in furtherance of the agreement, which caused the plaintiff actual injury." *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*, 598 F. Supp. 3d 348, 357 (D. Md. 2022) (citing *Marshall*, 758 F.3d at 541). "Because the '[i]ndependent acts of two wrongdoers do not make a conspiracy,' a plaintiff must allege facts sufficient to infer the existence of an agreement or concerted action." *Id.* (quoting *Murdaugh Volkswagen, Inc. v. First Nat. Bank of S.C.*, 639 F.2d 1073, 1076 (4th Cir. 1981)).

Here, Plaintiff offers only conclusory allegations that the four Defendants had an "understanding" to deprive Plaintiff of certain rights. ECF 37, at 39 ¶ 142, 40 ¶ 143. This assertion does not establish any facts and does not support Plaintiff's claim of civil conspiracy. Plaintiff himself acknowledges that Defendants may "likely" say that "Plaintiff has no proof of this scheme," though he contends that Defendants must be "held to account" and "offer direct evidence that their statements are true." *Id.* at 40 ¶ 145. This assertion misapprehends the relevant standard regarding the sufficiency of complaints in a civil action. A plaintiff's complaint must plead

sufficient "factual content" to allow a court to draw "the reasonable inference that the defendant

is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[L]abels and conclusions" are not

the same as factual content, *Twombly*, 550 U.S. at 555, and Plaintiff cannot sustain his claim based

on his own conclusory, factually unsupported allegation that the four individual Defendants must,

somehow, have conspired against him. Plaintiff's civil conspiracy claim is therefore dismissed as

to all Defendants.[9]

## IV.    CONCLUSION

The Court understands that Plaintiff was distressed by the events he narrates. However, he

does not support his claims under 42 U.S.C. § 1983 with any facts beyond his own conclusions

and assertions. This is not evidence on which the Court may rely, and it does not generate a

genuine dispute of material fact that would warrant continuation of this action. Moreover, he fails

---

[9] Defendants Shier, Rivers, and the County also argue in their motion that Plaintiff failed to provide the required notice under Maryland's Local Government Tort Claims Act ("LGTCA"). ECF 38-1, at 24–25. The LGTCA makes "a local government [ ] liable for any judgment against its employees for damages resulting from" torts committed by the employee in the scope of their employment with the local government. Md. Code Ann., Cts. & Jud. Proc. § 5-303(b)(1). However, the LGTCA conditions a local government's liability on "compliance with a notice requirement, which provides that 'an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 1 year after the injury.'" *Hisp. Nat'l L. Enf't Ass'n NCR v. Prince George's Cnty.*, Civ. No. 18-3821-TDC, 2020 WL 903205 at *6 (D. Md. Feb. 25, 2020) (quoting Md. Code. Ann., Cts. & Jud. Proc. § 5-304(b)(1)). "A plaintiff is excused from the notice requirement if (1) the plaintiff can show good cause for why notice was not provided and that the defendant was not prejudiced by the lack of notice, or (2) the defendant had actual or constructive notice of the injury within one year." *Gyamerah v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, Civ. No. 24-00575-AAQ, 2024 WL 4361854, at *3 (D. Md. Oct. 1, 2024). However, where the notice requirement applies, it is "a condition precedent to the right to maintain an action for damages . . . and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action." *Renn v. Bd. of Comm'rs of Charles Cnty.*, 352 F. Supp. 2d 599, 602 (D. Md. 2005) (internal citation omitted). Here, Plaintiff's complaint does not detail compliance with the LGTCA's notice provision regarding his civil conspiracy claim, nor does it argue that the requirement should be excused. Further, Plaintiff's response in opposition states, "to the extent that Plaintiff failed to provide notice" under the LGTCA, "Plaintiff withdraws it." ECF 45, at 43. It is unclear if Plaintiff means to say he is withdrawing his civil conspiracy claim; regardless, he appears to concede that he neither provided notice nor claimed an excuse under the LGTCA.

to state a claim for relief as regards both Count I and Count IV of his complaint. Accordingly, for the foregoing reasons, the motion to dismiss, or, in the alternative, for summary judgment, filed by Defendants Rivers, Shier, and the County, ECF 38, is GRANTED. Defendant King's partial motion to dismiss, ECF 41, is GRANTED, and the Court will also *sua sponte* DISMISS the claims against the unserved Defendant Herrera. While Plaintiff's motions to seal are GRANTED, as is his motion to amend, his motion to for leave to file a surreply is DENIED.

A separate implementing Order will issue.

Dated: <u>May 7, 2025</u>

/s/

Brendan A. Hurson

United States District Judge

34